Avery N. RICHARDSON *v.* STATE of Arkansas

CR 81-87                               625 S.W. 2d 504

Supreme Court of Arkansas
Opinion delivered December 21, 1981

*Macom, Moorhead, Green & Henry,* by: *J. W. Green, Jr.,* for appellant.

*Steve Clark,* Atty. Gen., by: *Victra L. Fewell,* Asst. Atty. Gen., for appellee.

JOHN I. PURTLE, Justice. During the course of appellant's trial for first degree murder the trial court allowed a custodial statement to be introduced into evidence. Appellant appeals his conviction solely on the grounds that the statement should not have been allowed into evidence and resulted in prejudice. We agree with the appellant that the admission of the statement was prejudicial error.

Appellant was taken into custody about 10:00 o'clock

on July 9, 1980. He was informed of his rights under Miranda and given a breathalyzer test which indicated his blood alcohol content was .27. The officers admitted that appellant was drunk. Officers present at at least a part of the taking of appellant's statement were Deputy Ellenburg, Sergeant Rosegrant of the state police and County Sheriff Garrison. Sometime during this period the appellant told Sheriff Garrison he wanted an attorney. Nevertheless, the statement was taken on the theory that appellant had changed his mind. A second statement was taken about 24 hours later on July 10, 1980. The appellant had been held in confinement between the time the first and second statements were given. The second statement was given at the initiation of the officers and they stated he was again given his Miranda warnings.

The testimony indicated appellant did not read the rights forms but, nevertheless, signed them. This fact is illustrated by questions and answers put to Sergeant Rosegrant at the suppression hearing:

Question: Okay. Did you ever hand him the rights statements which have been referred to here as Plaintiff's Exhibits 1 and 3 and ask him to read those to you?

Answer: Yes, sir.

Question: Did he read 'em to you?

Answer: He did not read 'em. He just signed 'em.

The officer admitted he knew that the appellant could not read or write and that the extent of his educational ability was that he could sign his name. For some reason the officers seemed to know that appellant was not enrolled in a continuing education program. The officers described him as a drunkard and as not being very smart. The state hospital examination rated him with an IQ of about 82.

At the first suppression hearing it was admitted by the officers that the appellant's blood count was .27 after he had given the statement. Although one or two officers testified

they thought he knew what he was doing, others testified they thought not. The statement given on July 9, 1980, was suppressed at the hearing. Officer Ellenburg's testimony is unclear as to whether he knew appellant had requested an attorney on the day before. Ellenburg was present when Rosegrant took the second statement, and was also present during at least a portion of the taking of the first statement. The following portion of cross-examination of Ellenburg is a part of the record:

> Question: Well, had you been told that he said he wanted a lawyer?
>
> Answer: By Sheriff Garrison.
>
> Question: So having been told that he wanted a lawyer the second statement was taken?
>
> Answer: Yes, sir.

Therefore, it is quite obvious at least one of the officers, who was present at the taking of both statements, knew the appellant had requested a lawyer the day before.

It is true that later Ellenburg and perhaps Rosegrant both stated they did not know about the request for the attorney. However, the record is most confusing and the best we have been able to determine is that the officers generally knew that he had requested an attorney on July 9 and the statement taken on July 10 was initiated at the request of the officers.

The only question to be considered by this court is whether the statement taken on July 10, 1980, should have been admitted into evidence. It is the duty of the state to prove by a preponderance of the evidence that a custodial statement was voluntarily given. *Harvey* v. *State*, 272 Ark. 19, 611 S.W. 2d 762 (1981). Also, in reviewing the voluntariness of a confession we make an independent determination based upon the totality of the circumstances and resolve all doubts in favor of safeguarding individual rights. We reverse the trial court under conditions where we are able to say that

the holding was clearly erroneous. *Giles* v. *State,* 261 Ark. 413, 549 S.W. 2d 479 (1977).

When we consider the totality of the circumstances in this case we have to consider that the appellant was taken into custody when his alcohol test registered .27. The officers admitted he was drunk and, further, they called him a regular drunkard and had knowledge that he stayed drunk a large part of the time. They also knew he could neither read nor write except sign his name. He was locked in jail the entire time between his apprehension and the taking of his second statement. At least one of the officers admitted that the appellant stated he wanted an attorney. Nevertheless, the questioning continued. The two officers who took the second statement were present along with Sheriff Garrison on the first day when the appellant requested the services of attorney. Also, Sergeant Rosegrant states that immediately after he took the second statement the appellant stated "I think I need an attorney." Rosegrant readily agreed with this statement.

We think the case of *Edwards* v. *Arizona,* 451 U.S. 477, 101 S. Ct. 1880, 68 L. Ed. 2d 379 (1981), is controlling in the present factual situation. In *Edwards* the United States Supreme Court held that the admission of a confession obtained from a defendant at custodial interrogation on the day following defendant's request for counsel was violative of the Fourth and Fifth Amendment rights to have counsel present at custodial interrogation. *Edwards* holds that waiver of counsel must not only be voluntary but constitute a knowing and intelligent relinquishment or abandonment of a known right or privilege. Such question depends in each case upon the particular facts and circumstances surrounding the case, including the background, experience, conduct and other facts related to the accused. *Johnson* v. *Zerbst,* 304 U.S. 458 (1938). What *Edwards* did hold was that when an accused has once invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police initiated custodial interrogation even if he had subsequently been advised of his rights.

The court in *Edwards* further stated:

> . . .an accused, such as Edwards, having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges or conversations with the police.

This is really no different from the original holding in Miranda.

Therefore, under the totality of the circumstances existing in this case, we are unable to say that the state has met its burden of proof by showing through a preponderance of the evidence that the appellant's statement of July 10, 1980, was voluntarily made. Therefore, the introduction of such statement constitutes prejudicial error, and the case must be reversed and remanded.

Reversed and remanded.